UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 08-PO-224 JLA

UNITED STATES OF AMERICA

v.

MICHELLE STRASNICK

**ORDER ON**

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**
**(Docket # 4)**

ALEXANDER, M.J.

On February 27, 2008, Defendant, Michelle J. Strasnick, pled not guilty at  her arraignment before this Court to three federal offenses stemming from a motor vehicle stop by a National Park Service Ranger: to wit, a stop sign violation, operating under the influence of alcohol, and refusal to submit to chemical testing. She was released that day on personal recognizance. On May 7, 2008, Strasnick filed a motion to suppress the use of or reference to any evidence obtained from her person or property as a result of the motor vehicle stop. After hearing, reviewing the parties' submissions, and for the reasons detailed below, Defendant's motion is DENIED.

At approximately 12:25 a.m. on October 19, 2007, Strasnick was driving westbound on 1st Avenue, within the federal boundaries of the Boston National

Historical Park (the "Park"), in Charlestown, Massachusetts. David LaMere, a National

Park Service Ranger on stationary patrol at the exit to the Park, observed Strasnick run

a stop sign at the intersection of 1st Avenue and 5th Street, within a portion of the Park

known as the Charlestown Naval Yard.  Ranger LaMere followed Strasnick's vehicle

as she exited the boundaries of the Park and turned left onto Chelsea Street, entering

the city limits of Boston. At that point, Ranger LaMere allegedly observed Strasnick

drift into the right lane and overcorrect back into the left lane before activating his

emergency flashing lights.

Seeing the lights, Strasnick immediately pulled over to the right side of the road

and Ranger LaMere subsequently approached her vehicle. Upon arriving at the

vehicle's driver side door, Ranger LaMere noted a "strong odor of an alcoholic

beverage" and observed that Strasnick had "glassy" eyes and "thick" speech.  As such,

he asked Strasnick to perform three field sobriety tests, all of which she failed. Next,

Ranger LaMere requested that Strasnick provide a breath sample. Strasnick initially

refused, but after being handcuffed (by another National Park Ranger), Strasnick

indicated she would provide a breath sample.  After registering a .157 on the breath

test, her car was towed and she was detained and transported to the rangers' station.

Once at the station, Strasnick refused to comply with a federal law requiring that she

submit to chemical testing for the presence of alcohol or drugs.  The rangers eventually

released Strasnick at 2:29 a.m.  Prior to her release, Strasnick was issued three federal

violation notices for: (1) failing to comply with a traffic control device,[1] (2) operating

under the influence of alcohol (OUI),[2] and (3) refusing to submit to chemical testing.[3]

Strasnick now moves to suppress all post arrest[4] statements, all observations

made by the rangers, and all physical evidence taken from her on October 19, 2007.

Strasnick asserts that suppression is appropriate because her detention amounted to an

extraterritorial illegal arrest that was unreasonable and violative of her Fourth

Amendment rights. Strasnick's assertion is that the detention was tantamount to an

illegal arrest for two principle reasons: (1) Ranger LaMere exceeded the scope of his

jurisdictional authority when he stopped and detained Strasnick off of federal property,

and (2) Ranger LaMere's reliance on his federal investigative authority was improper

given that probable cause for the OUI offense was only established once Strasnick was

outside of the Park and off of federal property.  Having been unlawfully arrested and

subsequently charged with federal offenses as a direct result of evidence gathered

---

[1] In violation of 36 CFR 4.12.

[2] In violation of 36 CFR 4.23(a)(1).

[3] In violation of 36 CFR 4.23(c)(2).

[4] As discussed in more detail below, the parties dispute whether Strasnick was arrested or detained.

during and after that illegal arrest, Strasnick moves to suppress the "poisonous fruit" derived therefrom.

The Government refutes the contention that Strasnick was arrested and opposes suppression of the evidence on the grounds that Ranger LaMere was acting within his *investigative* power and that Ranger LaMere never exceeded the scope of his investigative stop.  In the alternative, the Government maintains that even if this Court found that a <u>de</u> <u>facto</u> arrest occurred, suppression is inappropriate because the arrest was, nonetheless, reasonable.

There are two principle issues presented: whether Strasnick's detention was a permissible investigative stop or an unlawful arrest, and whether the evidence derived from her detention should be suppressed.  This Court begins with the undisputed premise that rangers are authorized to make warrantless arrests inside of Park boundaries for either a federal offense committed within their presence, or a felony that the ranger has reasonable grounds to believe has been committed or is being committed.  16 U.S.C. § 1a-6(b)(1).  With one exception, the aforementioned authority is restricted to warrantless arrests made *inside* of the Park's boundaries.  A ranger has the authority to arrest an individual outside of the Park only where the suspect has fled federal property for purposes of avoiding the arrest.  <u>Id.</u>; <u>see</u> <u>United States v. Jones</u>, 428 F. Supp. 2d 497 (W.D. Va. 2006) (holding that pursuant to 16 U.S.C. § 1a-6(b),

a ranger who arrested the defendant outside of the confines of the Park lacked the statutory authority to make the arrest because the defendant was not fleeing the Park to avoid arrest nor did he know or should have reasonably known that he was being pursued).

Citing Jones, Strasnick asseverates that the alleged arrest was illegal because there is no indication that she was fleeing arrest, nor does the Government allege she knew or should have known that she was being followed by Ranger LaMere.  Relying on the limitations of a Park Ranger's arrest authority, Strasnick maintains that Ranger LaMere was not acting within the scope of his investigative authority when probable cause was established, a fact sufficient to deem the arrest unreasonable.  See United States. v. Mikulski, 317 F.3d 1228 (10th Cir. 2003) (noting that an arrest in violation of a territorial limitation statute by itself is not sufficient to trigger the Fourth Amendment exclusionary rule, however,  it is a factor to take into consideration).  In so doing, Strasnick cites United States v. Smith for the proposition that the scope of federal investigative authority is not restricted to federal property *so long as probable cause is established within the park system.*  713 F.2d 491 (9th Cir. 1983) (emphasis added).  Disregarding the stop sign violation, Strasnick asseverates that only after following Strasnick onto Chelsea Street, observing her driving, pulling her over, approaching the vehicle, and administering the field sobriety tests, was probable cause

for an OUI offense established.  Thus, under  Smith, Ranger LaMere was not acting

within the scope of his federal investigative authority because probable cause for the

OUI was established off of Park property.   Ranger LaMere's actions were, thus,

unreasonable and dictate suppression under the Fourth Amendment.

Strasnick's analysis misses the mark.   She confuses the warrantless arrest

authority found in § 1a-6(b)(1)[5] for the investigative authority outlined in § 1a-6(b)(3)[6].

Because Ranger LaMere acted within his *investigative* powers pursuant to § 1a-6(b)(3),

---

[5]"In addition to any other authority conferred by law, the Secretary of the Interior is authorized to designate, pursuant to standards prescribed in regulations by the Secretary, certain officers or employees of the Department of the Interior who shall maintain law and order and protect persons and property within areas of the National Park System. In the performance of such duties, the officers or employees, so designated, may (1) carry firearms and make arrests without warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of the United States if he has reasonable grounds to believe that the person to be arrested has committed or is committing such felony, provided such arrests occur within that system or the person to be arrested is fleeing therefrom to avoid arrest." 16 U.S.C. § 1a-6(b)(1).

[6]"In addition to any other authority conferred by law, the Secretary of the Interior is authorized to designate, pursuant to standards prescribed in regulations by the Secretary, certain officers or employees of the Department of the Interior who shall maintain law and order and protect persons and property within areas of the National Park System. In the performance of such duties, the officers or employees, so designated, may...(3) conduct investigations of offenses against the United States committed in that system in the absence of investigation thereof by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of such other agency." 16 U.S.C. § 1a-6(b)(3)

for which there is no geographic limitation, he was authorized to stop Strasnick outside of the Park to investigate the traffic violation, running a stop sign, that occurred inside of the Park. See id. at 494 (stating that "[t]he geographic scope of [a ranger's] investigative authority...is not restricted to federal property"). Even without Ranger LaMere's post-stop observations, he had reasonable suspicion to stop Strasnick (for the stop sign offense) [7] and upon considering the evidence of impairment once he approached the vehicle conduct a permissible, temporary investigative detention [8] under Terry v. Ohio. 392 U.S. 1 (1968). As a result, the limited *arrest* authority under 16 U.S.C. § 1a-6(b) need not be implicated. In further support, the Government posits that at no point was the scope of the Terry stop ever exceeded such that a de facto arrest had occurred. See United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994) (quoting United States v. Walker, 924 F.2d 1, 3 (1st Cir. 1991) (indicating that in evaluating the overall reasonableness of a Terry stop, the reviewing court must "first consider whether

---

[7] Ranger LaMere's motivation for stopping Strasnick (investigating a traffic violation) was permissible under Wren v. United States. 517 U.S. 806, 810 (1996) (stating that "the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred").

[8] Strasnick's two hour detention entailed the following: stopping her car, running her license and registration, administering field sobriety tests, making arrangements for her car to be towed, administrating a field breath test, transporting her to the rangers' office, running her criminal record, checking for outstanding warrants, writing violation notices, requesting a breath test, fingerprinting and photographing her, and her reviewing and signing paperwork.

7

the officer's action was justified at its inception, and second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place")).

While it is quite perspicuous that Ranger LaMere lacked the statutory authority necessary to lawfully arrest Strasnick off of federal property,[9] it is not necessary for this Court to decide whether Strasnick's initial Terry detention and subsequent transfer amounted to a de facto arrest. In accordance with Jones, Ranger LaMere's lack of statutory authority to *arrest* Strasnick is not a per se violation of her Fourth Amendment rights. See Jones, 428 F. Supp 2d at 502. The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. In determining what is reasonable under the Fourth Amendment, the Supreme Court has held that "when officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest and to search the suspect in order to safeguard evidence and ensure their own safety." Virginia v. Moore, 128 S.Ct. 1598, 1608 (2008). So long as the arrest is based on probable cause, it is

---

[9] There is no evidence that Strasnick was aware she had been observed running a stop sign in the Charlestown Naval Yard. Similarly, there is no indication that Strasnick was fleeing arrest or should have reasonably known that she was being pursued by Ranger LaMere. Accordingly, under 16 U.S.C. § 1a-6(b)(1), Ranger LaMere's arrest authority was limited to the confines of the Park.

8

constitutionally permissible and the Fourth Amendment does not require exclusion of the evidence recovered from the arrest or the search incident to that arrest.[10] See id. at 1607-1608.

The issue of reasonableness, thus, does not turn on the legality of the arrest. Jones, 428 F. Supp 2d at 503. Even if the detention and transportation to the rangers' station were deemed an illegal arrest, evidence gathered prior to the de facto arrest will not be suppressed.  Moreover, and in conformity with Jones, Strasnick's principle case, the evidence gathered after the de facto arrest need not be suppressed either.  Although the Jones Court determined that an unlawful arrest had occurred, it did not suppress the evidence because it found that the arrest was nonetheless reasonable.  Id. at 503-504. Reasonableness is "[t]he underlying command of the Fourth Amendment" and "... the fact than an arrest may have violated a territorial-limitation statute...is merely a factor to be considered when deciding whether this constitutional mandate has been followed."  Id. at 502.

---

[10]Searches incident to a *constitutionally permissible arrest* are permitted under United States v. Robinson, 414 U.S. 218 (1973). The Supreme Court has said that  the Robinson rule covers lawful arrests, with the Constitution as the referencing law, and "equate[s] a lawful arrest with an arrest based on probable cause: '[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; *that intrusion being lawful*, a search incident to the arrest requires no additional justification.'" Moore, 128 S. Ct. at 1607 (citing Robinson, 414 U.S. at 235 (emphasis added)).

In the instant case, the Government correctly asseverates that Strasnick's detention[11] and the ensuing OUI investigation were constitutionally permissible. As soon as Ranger LaMere witnessed Strasnick roll through the stop sign, he, at the very least, had reasonable suspicion to believe she had committed a stop sign violation. And while following and observing her erratic driving on the streets of Boston may not have furnished Ranger LaMere with probable cause to believe Strasnick had committed an OUI offense in the Park, once having pulled her over, the odor of alcohol emanating from the vehicle, her impaired speech, and the results of the breath test and field sobriety tests indisputably provided him with probable cause for the OUI offense. Ultimately, the motivation for pulling Strasnick over does not compromise the reasonableness of the stop. [12]   So long as there is "probable cause to believe that a criminal offense has been or is being committed," a warrantless arrest is reasonable under the Fourth Amendment. Id. at 503 (quoting Devenpeck v. Alford, 543 U.S. 146,

_____

[11] The fact that Robinson and Moore discuss "arrests" does not implicate this Court's determination on the detention at hand, nor does it serve to distinguish the facts of this case from Robinson or Moore. Rather, it demonstrates the irrelevance of a determination of an "arrest." Assuming there is probable cause,  evidence gathered from an illegal arrest is admissible just as evidence gathered from a legal arrest would be admissible.

[12] The motivation for pulling Strasnick over is not problematic considering the Supreme Court's conclusion in Whren that "the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred." Whren, 517 U.S. at 810.

152 (2004)).   Lastly, and contrary to Strasnick's contention, an extraterritorial investigation does not exceed the investigative scope under 16 U.S.C. § 1a-6(b)(3) where the probable cause was gathered outside of the Park.   See United States v. Guillie, No. 02-288, 2002 U.S. Dist. LEXIS 22597 at *1, *14 (E.D. La. Nov. 18, 2002) (rangers may conduct investigations outside of park system boundaries where the offense being investigated was committed within the park and when the extraterritorial stop leads to probable cause for a different offense, it is sufficient that "the unlawful conduct that triggered the chain of events occurred in the park").   [13]   Thus, while Strasnick's detention may or may not have constituted an unlawful arrest, said detention was certainly not without probable cause and, therefore, not unreasonable and, in any case, of no moment.

Accordingly, this Court finds that Ranger LaMere was authorized to stop Strasnick outside of the Park for purposes of conducting an investigation into the initial traffic violation.   See 16 U.S.C. § 1a-6(b)(3), see also Whren, 517 U.S. at 810. The events leading up to and following the stop established probable cause to believe Strasnick had committed an OUI offense within the boundaries of the Park. Having

---

[13] While Strasnick contends that Smith stands for the proposition the Rangers' investigative authority is  not limited to federal property if probable cause was determined *inside of the Park*, there is no indication within the text of Smith that substantiates this narrow conclusion.

shown probable cause sufficient to  fulfill the reasonableness safeguard of the Fourth Amendment, it matters not whether Strasnick was "detained" or "arrested," and suppression of the evidence is unwarranted. Strasnick's motion to suppress is, thus, DENIED.


SO ORDERED.


_June 10, 2008_                                        _/s/ Joyce London Alexander_
Date                                                   United States Magistrate Judge